1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   JESUS ROMERO,                          )
                                           )    NO.   CV 08-544-TUC-CKJ (BPV)
10                     Plaintiff,          )
                                           )
11     vs.                                 )    **REPORT AND RECOMMENDATION**
                                           )
12  MICHAEL J. ASTRUE, Commissioner of)
    Social Security,                       )
13                                         )
                       Defendant.          )
14  _____)

15          Plaintiff filed this action for review of the final decision of the Commissioner for

16  Social Security pursuant to 42 U.S.C. §§ 405(g).  The case has been referred to the United

17  States Magistrate Judge pursuant to the Rules of Practice of this Court.

18          Pending before the Court is Plaintiff's appeal of the final decision of the

19  Commissioner denying benefits.  Plaintiff filed an opening brief on February 17, 2009 (Doc.

20  No. 10)[1], and Defendant filed a brief in opposition on March 13, 2009 (Doc. No. 11). For the

21  following reasons, the Magistrate Judge recommends that the District Court remand the case

22  pursuant to sentence six of 42 U.S.C. § 405(g), for the purpose of consideration of the new

23  evidence.  Alternatively, the Magistrate Judge recommends that the District Court remand

24  the case for further findings consistent with this report.

25  **I.    PROCEDURAL HISTORY**

26          Plaintiff filed an Application for Social Security Disability Insurance Benefits and

27  Supplemental Security Income (SSI) Benefits on January 22, 2004, alleging that he had

28  _____

         [1]  "Doc. No." refers to documents in this Court's file.

suffered from a disability since January 2, 2004.  (Transcript/Administrative Record ("Tr.") 53-56, 201-04)  Plaintiff alleged he was disabled due to "[b]oth shoulders tearing of tendons, stomach hernia."  (Tr. 63 )

The Social Security Administration (SSA) denied Plaintiff's Application initially, and on reconsideration.  (Tr. 28-29, 205-16)  Plaintiff requested review (Tr. 44), and on March 29, 2005, appeared with counsel, and an interpreter, and testified at a hearing before Administrative Law Judge ("ALJ") Frederick Graf.  (Tr. 217-28)  After the record was closed, Plaintiff alleges that he submitted additional evidence to the ALJ, along with a letter stating that even though the record was closed, the evidence was relevant and should be considered.  (Opening Brief, Ex. A.)  On July 6, 2005, the ALJ found Plaintiff was not disabled because the "evidence of record is not fully supportive of a continuous 12 month period or more of a disabling impairment."  (Tr. 16)

Plaintiff requested review of the decision by the Social Security Administration's Appeals Council.  (Tr. 9A)  The Appeals Council denied review on August 14, 2008, making the decision of the ALJ the final decision of the Commissioner.  (Tr. 4-8)  *See* 20 C.F.R. §§ 404.981.  Plaintiff timely filed the instant Complaint in U.S. District Court appealing the Commissioner's final decision (Doc. No. 1).

**II.  THE COMMISSIONER'S DECISION AND EVIDENCE PRESENTED**

A.  Plaintiff's Education and Work History

Plaintiff was born on April 3, 1960, and was forty-five year's old on the ALJ's date of decision.  (Tr. 21, 65)   Plaintiff completed 6th grade and is a non-English speaker.  (Tr. 62, 68) Plaintiff's past work consists of "car detailing" at a car dealership, and "press man": at a dry cleaners.  (Tr. 63, 70)

B.  Plaintiff's Testimony

On March 29, 2005, Plaintiff appeared before ALJ Graf, with an attorney representative and an interpreter.  (Tr. 217-228)  Exhibits 1A -7F, and 1SSI to 5SSI were admitted into evidence.  (Tr. 219)

Plaintiff testified that his first shoulder surgery, on the right shoulder, took place in

2000. (Tr. 222) Plaintiff returned to work three months after surgery, and continued having problems with his right arm, but kept working. (*Id*.) Plaintiff returned to see Dr. Sotelo in 2003, because he had pain in his left shoulder. (*Id*.) After an MRI in 2003 indicated a torn rotator cuff, Plaintiff continued to work, and did not have the recommended surgery for his shoulder because he was uninsured. (Tr. 222-23)

Plaintiff had surgery on his left shoulder in April, 2004. (Tr. 223) Plaintiff began physical therapy following surgery which helped his left shoulder a little. (Tr. 223) Plaintiff started to notice increasing symptoms in his right shoulder following surgery which he attributed to compensating for his left shoulder by doing more with his right arm and shoulder. (Tr. 224)

Plaintiff had surgery on his right shoulder on January 14, 2005. (Tr. 224) Plaintiff received physical therapy after the surgery, but stated that it did not help his symptoms, and his shoulder feels "just the same." (Tr. 225) Plaintiff testified that both shoulders hurt, the right hurting more than his left. (*Id*) At the hearing Plaintiff could raise his left arm above his chest and slightly above his head. (*Id*) Plaintiff could not pick up his right arm. (*Id*) Plaintiff testified that lifting little weights at therapy increases his pain, and that he could lift no more than five pounds. (Tr. 225-26)

Plaintiff testified that he takes pain medication, but it does not help. (Tr. 226) Plaintiff has pain every day, that it bothers him while he is sleeping, and he cannot sleep an entire evening. (Tr. 226)

Plaintiff testified that he does some dishes, and other "little things," but no yard work. (Tr. 226) Plaintiff gets sleepy and has to lie down after he takes his pills. (*Id*) Plaintiff's therapist told him that "it was very possible" that he would need another surgery on his right shoulder. (Tr. 227)

C.    Plaintiff's Medical History - Physical Impairment

An MRI of Plaintiff's right shoulder on August 4, 2000, revealed findings consistent with a rotator cuff tear, as well as possible predisposition to impingement syndrome. (Tr. 146) Dr. Abelardo Sotelo advised Plaintiff to undergo surgery, and Plaintiff underwent

surgery on November 15, 2000. (Tr. 160) On November 27, 2000, Dr. Sotelo reported that neurovascular sensory was intact, and x-rays revealed excellent evidence of decompression; Dr. Sotelo recommended that, because he was doing so well, he would like Plaintiff to continue with physical therapy. (Tr. 160) A postoperative examination of Plaintiff on December 5, 2000, noted satisfactory postoperative configuration of Plaintiff's right shoulder. (Tr. 145) In December, 2000, Dr. Sotelo reported that Plaintiff was still doing well, had virtually normal range of motion, and neurovascular sensory remained intact. (Tr. 159)

Plaintiff was seen by physicians for his shoulder problems, as well as for regular medical care, at West Horizon Medical Center. (Tr. 123-158.) Dr. Horacio Ore-Giron, Plaintiff's treating physician, noted on May 28, 2003, that Plaintiff was "having more severe pain in the left shoulder and it has started in the right shoulder." (Tr. 133) An MRI of Plaintiff's left shoulder on May 30, 2003, confirmed a tear of the supraspinatus tendon. (Tr. 138) Dr. Ore-Giron referred Plaintiff to an orthopedist for treatment. (Tr. 133) Dr. Sotelo advised Plaintiff to undergo surgery to repair the rotator cuff. (Tr. 159) Plaintiff opted not to do surgery, but to continue with exercise and medication. (Tr. 131) On November 5, 2003, Plaintiff was seen again by Dr. Ore-Giron for bilateral shoulder pain. (Tr. 130) On November 5, 2003, Dr. Ore-Giron explained that although an orthopedist recommended surgery for a rupture of the rotator cuff, Plaintiff would wait for surgery until February, 2004, because Plaintiff's insurance would not cover the surgery until he had been with the insurer for one year. (Tr. 130) On January 7, 2004, treatment notes from Dr. Horacio Ore-Giron at West Horizon Medical Center indicate that Plaintiff was experiencing shoulder pains in both shoulders, and difficulty raising arms overhead; Dr. Ore-Giron attributed this to probable rotator cuff rupture and referred him to Dr. Sotelo, an orthopedist. (Tr. 126) On February 22, 2004, after his insurance authorized the surgery, Dr. Ore-Giron again referred Plaintiff to orthopedics. (Tr. 124, 158) Dr. Juan Peña noted a history of chronic osteoarticular pain with bilateral shoulder problems after right shoulder surgery. (Tr. 124) On that basis, Dr. Peña filled out a form for his work, the contents of which are not reproduced in the administrative record. (Tr. 124)

Dr. Abelardo Sotelo performed surgery on Plaintiff's left shoulder on April 12, 2004. (Tr. 141) Dr. Sotelo confirmed a rotator cuff tear, impingement syndrome, and degenerative joint disease of Plaintiff's acromioclavicular joint during surgery. (Tr. 141) On April 19, 2004, Dr. Sotelo reported that the new x-rays "look very satisfactory," Plaintiff's neurovascular sensory was intact, and he was "delighted with the progress" and would start Plaintiff on physical therapy. (Tr. 158) A week later Dr. Sotelo reported similar progress. (Tr. 158) Dr. Sotelo, noting a restricted range of motion, prescribed physical therapy for Plaintiff on May 11, 2004. (Tr. 156-57)

Plaintiff was evaluated by a Disability Determinations Services ("DDS") doctor, Dr. Hayden, on May 11, 2004. Dr. Hayden completed a Physical Residual Functional Capacity Assessment and concluded that Plaintiff was capable of the following work-related activities: Lift/carry 20 pounds occasionally and 10 pounds frequently. Stand/walk at least six hours per an eight-hour workday. Sit at least six hours per an eight-hour workday. Unlimited pushing and pulling. Occasional postural limitations were noted for climbing ladder, rope or scaffolds, and frequent limitations for climbing ramps/stairs, balancing, stooping, kneeling, crouching or crawling "[d]ue to [symptoms] of shoulder pain s/p bilat[eral] rotator cuff repair' which could cause exacerbation of symptoms and loss of control. Limitations were established for reaching in all directions (including overhead) for the same reasons noted for postural limitations, but no restrictions for handling, fingering and feeling. There were no visual limitations, communicative limitations, or environment limitations other than height hazards. (Tr. 183) The DDS doctor noted that "although cl[aimant] may be credible with [symptoms] at this time, evidence indicates good results from prior [treatment]. With continued treatment, cl[aimant] should have the capacity noted in this RFC." (Tr. 152)

On June 14, 2004, Dr. Sotelo noted that Plaintiff was improving significantly, with an excellent range of motion, but with some degree of weakness and a little bit of decreased range of motion. (Tr. 156) Physical therapy notes show general improvement throughout the duration of therapy related to decreased pain, increased strength, and increased active and passive range of motion, (from April 28, 2004 to June 22, 2004); but without full resolution,

especially regarding continuing pain and limited active range of motion.  (Tr. 160-186) In July, 2004, Dr. Sotelo noted that Plaintiff had developed a little bit of arthrofibrosis, "nothing major."  (Tr. 200)

Plaintiff was evaluated by a second DDS doctor on August 23, 2004.  The DDS doctor completed a Physical Residual Functional Capacity Assessment and concluded that Plaintiff was capable of the following work-related activities: Lift/carry 20 pounds occasionally and 10 pounds frequently.  Stand/walk at least six hours per an eight-hour workday.  Sit at least six hours per an eight-hour workday.  Unlimited pushing and pulling.  No postural, manipulative, visual, communicative or environmental limitations were established.  (Tr. 187-192)  The DDS doctor noted that he reviewed Plaintiff's chart, which the reviewer explained was "[s]omewhat confusing," but that he was able to determine that Plaintiff had undergone two shoulder surgeries, but was "on the road to recovery."  (Tr. 194) The reviewing doctor noted that Plaintiff's Activities of Daily Living were "not exactly credible" because he stated he could not drive, but drove to one of his interviews and also drives to pick up his children from school.  (Tr. 194)

In September, 2004, Dr. Sotelo noted that Plaintiff's left side was asymptomatic with normal range of motion, but that he wanted to see Plaintiff after an MRI of the right side was done.  (Tr. 200) The MRI revealed findings suspicious for high-grade, partial tears of the supraspinatus tendon, without retraction.  (Tr. 199)  In October, 2004, Dr. Sotelo noted that Plaintiff had a partial tear of the supraspinatus, but no retraction, and gave Plaintiff the option of having surgery or waiting.  (Tr. 200) Plaintiff chose to wait.  (Tr. 200)    In December, 2004, Plaintiff continued to have pain at the level of the right shoulder, and decided to proceed with the surgery.  (Tr. 196)

Dr. Sotelo performed surgery on January 24, 2005, confirming a rotator cuff tear during surgery, which he proceeded to repair.  (Tr. 198) Dr. Sotelo started Plaintiff on physical therapy in February, 2005.  (Tr. 196) In March, 2005, Plaintiff reported he was doing a lot better with physical therapy, and Dr. Sotelo recommended Plaintiff continue with physical therapy.  (Tr. 195)

On June 14, 2005, after Plaintiff's hearing, but prior to the ALJ's decision, Plaintiff asserts that Exhibit A was submitted to the ALJ along with a letter stating that even though the record was closed, the evidence was relevant and should be considered. (Doc. No. 10 at 2) Medical records from Dr. Goode indicated that on April 28, 2005, Plaintiff was unable to lift his arm, had significant pain at night, some pain at rest, and during the day had a lot of pain with activity. (Doc. No. 10, Ex. A, Dr. Goode's' treatment notes dated 4/28/05) Dr. Goode reviewed Plaintiff's record and ordered an MR scan to assess for a re-tear. (*Id*) The MRI indicated a full thickness recurrent rotator cuff tear, some biceps tendinopathy and subluxation of the biceps. (*Id*, MR Arthrogram of Right Shoulder 5/26/05) On June 1, 2005, Dr. Goode noted that Plaintiff could "barely resist gravity on that side" but thought that it was probably repairable, although it might not be. (*Id*) Dr. Goode stated that Plaintiff was "young and has poor function" and thought his "best bet" was to try a revision of the rotator cuff repair. (*Id*)

     D.    <u>The Commissioner's Decision</u>

On July 6, 2005, the ALJ made the following findings:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance benefits set forth in section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant has the following medically determinable impairment(s): status post bilateral surgical rotator cuff tear repairs.

4.    The claimant does not have any impairment or impairments that precluded the ability to do substantial gainful activity which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.(20 CFR § § 404.1505 and 416.905)

5.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § § 404.1505(a) and 416.905(a))

(Tr. 16-17)

The ALJ noted that Plaintiff's statements regarding symptoms and resulting limitations were generally credible, "but not to the extent alleged, because no determination

- 7 -

of a residual functional capacity limitation was made by any qualified treating physician that would limit the claimant to the degree asserted by claimant." (Tr. 16) There is no mention in the ALJ's decision of the additional evidence submitted from Dr. Goode. (Tr. 14-17)

The ALJ pointed out that in July, 2004, the claimant had developed a little bit of arthrofibrosis which was reported to be "nothing major," and, in October 2004, the claimant exhibited "a little bit of pain." On November 16, 2004, the claimant exhibited a totally asymptomatic left side with normal range of motion. Thus, the ALJ found that the evidence of record did not support a continuous 12 month period or more of a disabling impairment. The ALJ concluded that there was insufficient evidence of record to establish disability through the date of the ALJ's decision. (Tr. 16.)

E.    Additional Evidence Presented to the Appeals Council

Following the adverse decision by the ALJ, the Plaintiff submitted request for review on July 6, 2005 (Tr. 4), and supporting memorandum asserting that Plaintiff was disabled for twelve consecutive months on August 25, 2005. (Tr. 10b) Plaintiff asserts that he also submitted additional evidence, found in Exhibit A to his opening brief in this Court. Plaintiff's memorandum to the Appeals Council references Exhibit A, records from Dr. Joel Goode, but the exhibit itself is not attached to the memorandum found in the administrative record. (Tr. 10-10c)  Dr. Goode's treatment notes reflected, in addition to the evidence discussed above and submitted to the ALJ, that Plaintiff underwent a revision of the right rotator cuff repair with repair of deltoid dehiscence on July 5, 2005. (Opening Brief, Ex. A, Dr. Goode's' treatment notes dated 7/05/05) More than a year later, on November 16, 2006, Plaintiff's counsel sent a letter to the Appeals Council asking for the status of Plaintiff's appeal. (Tr. 9) Plaintiff noted that the Commissioner had previously misplaced the file in his case, necessitating that the matter be sent back to hearing, and resulting in Plaintiff providing his copy of the file with the ALJ. (Tr. 9) Plaintiff's counsel asserts that he was advised that the Appeals Council had no record of the Request for Review, and was later asked to send another copy, and did so, including Dr. Goode's updated records including a surgical report. Nearly three years after Plaintiff's initial request for review, on August 14, 2008, the Appeals

Council, without acknowledging Plaintiff's argument or evidence, denied Plaintiff's request for review.  (Tr. 4-6)

**III.    ISSUES**

A.    Plaintiff's Position

Plaintiff asserts that the ALJ erred in finding that the Plaintiff was not under a "disability" as defined in the appropriate provisions of the Social Security Act, for the required twelve months.  (Doc. No. 10 at 3.)

B.    Defendant's Position

Defendant contends that the ALJ (1) found that Plaintiff's left shoulder problems totally resolved within 8 months of his alleged onset date and therefore the ALJ properly found that his left shoulder impairment did not meet the statutory and regulatory duration requirement; (2) reasonably found that Plaintiff's right shoulder impairment did not meet the duration requirement because Plaintiff was doing a lot better only 6 months after he first complained of right shoulder pain.  (Doc. No. 11 at 4-5.)

Defendant asserts that Plaintiff does not provide any documentary proof of the fact that he submitted additional medical evidence relevant to his right shoulder to the ALJ after the hearing.  (*Id* at 5)  Defendant also contends that remand based on the new evidence would be improper because the additional evidence submitted by Plaintiff is not material because it is not likely that the ALJ would have reached a different conclusion if he were presented with the additional evidence because the last treatment record is dated July 14, 2005, less than 12-months after Plaintiff complained to Dr. Sotelo of right shoulder pain.  (*Id*)

**IV.    DISCUSSION**

A.    Standard of Review

An individual is entitled to Title II Social Security Disability Insurance benefits ("SSDIB") if the individual is insured for those benefits, has not attained retirement age, has applied for those benefits, and is disabled.  42 U.S.C. § 423(a)(1).  An individual is entitled to Title XVI Supplemental Security Income Disability benefits ("SSI") if the individual is disabled and meets certain eligibility requirements.  42 U.S.C. § 1381a.  The definition of

disability for SSDIB and SSI purposes is the same: the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Compare* 42 U.S.C. § 423(d)(1)(A) *with* 42 U.S.C. § 1382c (a)(3)(A).

The Ninth Circuit has stated that "'a claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy.'" *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990)).

The claimant has the burden to establish a prima facie case showing an inability to engage in previous occupations. *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982). The burden then shifts to the Commissioner to show that other substantial work, for which the claimant is qualified, exists in the national economy. *Id* (citing *Hall v. Secretary of HEW*, 602 F.2d 1372, 1375 (9th Cir. 1979); *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978)).

The court will set aside a denial of benefits only if the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982), *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir.1982)); 42 U.S.C. § 405(g)). In determining whether there is substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

Substantial evidence is "more than a scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence is "'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Commissioner, not the court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence and determine the case accordingly. Reviewing courts must consider the evidence that supports as well as detracts from the examiner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Moreover, "if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016,1019 (9th Cir. 1992).

Disability claims are evaluated pursuant to a five-step sequential process. 20 C.F.R. §§404.1520, 416.920; *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b). If so, then the claimant is not disabled under the Act and benefits are denied. *Id* If the claimant is not engaged in substantial gainful activity, the ALJ then proceeds to step two which requires a determination of whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts the claimant's physical or mental ability to do basic work activities. *Id* If the ALJ concludes that the impairment is not severe, the claim is denied. *Id* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled and no further inquiry is necessary. If a decision cannot be made based on the claimant's then current work activity or on medical facts alone because the claimant's impairment does not meet or equal a listed impairment, then evaluation proceeds to the fourth step. The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity ("RFC") to perform past work. 20 C.F.R. §§ 404.1520(e). If the ALJ concludes

that the claimant has RFC to perform past work, then the claim is denied. *Id* However, if the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f). At step five, in determining whether the claimant retained the ability to perform other work, the ALJ may refer to Medical Vocational Guidelines ("grids") promulgated by the SSA. *Desrosiers*, 846 F.2d at 576-577. The grids are a valid basis for denying claims where they accurately describe the claimant's abilities and limitations. *Heckler v. Campbell*, 461 U.S. 458, 462, n.5 (1983). However, because the grids are based on exertional or strength factors, where the claimant has significant nonexertional limitations, the grids do not apply. *Penny*, 2 F.3d at 958-959; *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). Where the grids do not apply, the ALJ must use a vocational expert in making a determination at step five. *Desrosiers*, 846 F.2d at 580.

A denial of Social Security benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987). When the ALJ has applied an incorrect legal standard in reaching a decision, we must remand unless, as a matter of law, the result could not be affected. *See NLRB v. Enterprise Assoc.*, 429 U.S. 507, 522 n.9 (1977); *Sagebrush Rebellion, Inc. V. Hodel*, 790 F.2d 760, 765 (9th Cir. 1986) (agency may rely on harmless error rule only when its mistake had no bearing on the substance of the decision).

B.    Analysis - Duration

The ALJ determined that Plaintiff's claim of physical impairment was not disabling given that it was not expected to last for one year. Implicit in this determination is a finding that the ALJ found the right and left shoulder impairment to be unrelated and did not "tack" them together to meet the 12-month duration requirement. Generally, "two separate disability causes ordinarily cannot be tacked to equal 12 months." *Ratto v. Secretary,* 839 F.Supp. 1415, 1427 (D.Or. 1993) (*citing* 20 CFR 404.1522(a)); *but see Smolen v. Chater*, 80

F.3d 1273, 1284 (9th Cir. 1996)(refusing to resolve the question of whether a plaintiff can tack unrelated impairments in order to meet the duration requirement, but noting that Social Security Ruling 82-52 allows tacking for re-entitlement purposes)   However, "a different rule applies where the first disability is related to the second.  Where an emerging mental impairment overlaps in time with a triggering but diminishing physical impairment, the combined effect of the impairments should be considered to the extent it might bear on the onset date of disability."  *Id* (*citing Lichter v. Bowen,* 814 F.2d 430, 436 (7th Cir. 1987)).  Moreover, "even if the two conditions are unrelated, the impairments may combine to created [sic] a continuous period of disability so long as the duration of each impairment, taken separately, lasted or was expected to last 12 months, and the initial onset of disability was before the insured status date."  *Id*

The ALJ did not clarify if Plaintiff's left and right shoulder injuries and surgery were considered to be related, or unrelated, for purposes of determining if the disability met the 12-month duration requirement.   Defendant assumes, without discussion, that the impairments are unrelated.  (*See* Doc. No. 11 at 4-5)[2]   The ALJ did find Plaintiff's medically determinable impairment was "status post bilateral surgical rotator cuff tear repairs" (Tr. 16), suggesting that the ALJ considered the impairments related, but simply found that together they did not meet the duration requirement.

In addition to failing to find if the impairments were related, the ALJ did not make findings clearly indicating the onset and duration of each impairment, either in combination or separately.  This lack of findings by the ALJ makes it difficult to determine if the new evidence submitted by Plaintiff is material.

To justify a remand, Plaintiff must show that the new evidence is material to

---

[2]Defendant states that Plaintiff stopped working in January 2004 due to left shoulder pain which was resolved by September 2004.  (Doc. No. 10 at 4)  Defendant further states that Plaintiff's right shoulder problems began by September 2004, but were resolved by March 2005.  (*Id* at 5)  Implicit in Defendant's argument therefore, is that the impairments are unrelated, and cannot be combined, or "tacked," in order to meet the 12-month duration requirement.

determining his disability, and that he had good cause for having failed to produce that evidence earlier. *See* 42 U.S.C. § 405(g) (2001).

To demonstrate good cause, Plaintiff must demonstrate that the new evidence was unavailable earlier. *See Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001). Because Plaintiff's fourth shoulder surgery occurred after Plaintiff's request for review, Plaintiff has demonstrated good cause. Although Defendant asserts that Plaintiff does not provide any documentary proof of the fact that he submitted additional medical evidence relevant to his right shoulder to the ALJ after the hearing, it seems, given the Defendant's demonstrated unreliable record keeping in this case that it is likely that Plaintiff did submit such evidence. Additionally, although the exhibit was not included in the administrative record's reproduction of Plaintiff's memorandum to the Appeals Council, the memorandum clearly makes reference to the missing exhibit, and to Dr. Goode's examination of Plaintiff in May, 2005.[3] No mention of this new evidence was made in the Appeals Council action denying review. (Tr. 4-6)

To be material under section 405(g), the new evidence must bear "directly and substantially on the matter in dispute." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir.1982). Plaintiff must additionally demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. *See Booz v. Secretary of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir.1983). Defendant asserts that the new evidence would not be material because it is not likely the ALJ would have reached a different conclusion if he were presented with the additional evidence because the last treatment record is dated July 14, 2005, less than 12-months after Plaintiff complained to Dr. Sotelo of right shoulder pain. This is inconsistent with both the evidence,

---

[3]Plaintiff also referred to a surgery by Dr. Goode on Plaintiff's right shoulder in January, 2005. This typographical error does not change this Court's recommendation. The memorandum clearly referred to an examination by Dr. Goode in May, 2005. A review of the administrative record would have revealed that Dr. Goode did not even treat Plaintiff until after the administrative hearing, in March, 2005. Any discrepancy in dates could have been resolved by referring to the actual exhibits.

1    and the ALJ's findings.

2         The evidence demonstrates that Plaintiff testified that he started to notice increasing

3    symptoms in his right shoulder following surgery of the left shoulder, in April, 2004.

4    Plaintiff attributed this to compensating for his left shoulder by doing more with his right arm

5    and shoulder. (Tr. 224)  On January 7, 2004, treatment notes from Dr. Horacio Ore-Giron

6    at West Horizon Medical Center indicate that Plaintiff was experiencing shoulder pains in

7    both shoulders, and difficulty raising arms overhead[4]. (Tr. 126) Treatment notes indicate that

8    treating physicians considered the problem bilateral from January 2004 through March 2004.

9    (Tr. 124, 126)   A right shoulder impairment that existed from January 2004 through at least

10   July, 2005, would meet the 12-month duration requirement.  Thus, the evidence in the record

11   suggests that there is a "reasonable possibility" that the new evidence would have changed

12   the outcome of the administrative hearing.

13        Although the ALJ did not consider an onset date for the right shoulder impairment,

14   the ALJ noted that an MRI in September, 2004 revealed a partial tear.  The ALJ found that

15   an MRI in September, 2004 demonstrated findings suspicious of a tear.  Plaintiff's third

16   shoulder surgery was performed by Dr. Goode in July, 2005.  Although Defendant implies

17   that, because the surgery was satisfactory and there are no treatment notes submitted after

18   July, 2005, that the evidence fails to show the impairment prevented him from performing

19   basic work activities a minimum of 12 consecutive months.  This statement misconstrues the

20   legal standard, which provided for a finding of disability if the impairment has lasted or *can*

21   *be expected to last* for a continuous period of not less than twelve months."  See 42 U.S.C.

22   § 423(d)(1)(A); 42 U.S.C. § 1382c (a)(3)(A) (emphasis added).

23        Dr. Goode's final treatment note in July indicates that, while Defendant correctly

24   states that the tear was "repaired relatively easily" and that Plaintiff was "neurologically

25   intact" and "did an excellent job" performing various upper extremity exercises, he was still

26   taking Percocet for pain, and that Dr. Goode would see him in a month, and would get him

27

28   —————————————

        [4]Although the ALJ found Plaintiff's statements generally credible, the ALJ applied

into physical therapy at that time, but that meanwhile he *was to wear a sling*. (Ex. A, Treatment notes dated 7/14/2005) Thus, Plaintiff's impairment clearly did not cease in July, 2005.

The ALJ concluded that Plaintiff was "doing a lot better by March 2005" (Tr. 16). This fact, in conjunction with the ALJ's conclusion that Plaintiff did not meet the duration requirement suggests that the ALJ considered the March 2005 date as the endpoint of Plaintiff's right shoulder impairment. Although this much is not clearly stated by the ALJ, it is implicit in his decision. Thus, if the ALJ considered the additional medical records from Dr. Goode, there is a reasonable probability that he would not have found the endpoint of Plaintiff's right shoulder impairment to be March 2005, but would have determined that the impairment had not resolved even as late as July 2005, when Plaintiff's physician recommended that Plaintiff wear a sling for another month and *then begin* physical therapy. Dr. Goode also noted that, because it was a revision of a previous surgery, he was "not in a rush to get him moving." (Opening Brief, Ex. A, treatment notes 7/14/05) This is highly suggestive of the impairment continuing at least until August 2005 and quite likely beyond. If the ALJ considered the onset date to be September 2004, there is a reasonable probability that the new evidence would have changed the ALJ's determination of the endpoint of Plaintiff's impairment to at least September 2005. It is also reasonable to conclude, given the length of his previous physical therapy treatments, and thus, would have changed the ALJ's decision that the evidence of record was not fully supportive of a continuous 12 month period or more of a disabling impairment.

The Magistrate Judge finds that the new medical evidence satisfies these requirements, and that there is a reasonable probability that the new evidence would have changed the outcome of the administrative hearing.

C.     Plaintiff's Credibility

"An ALJ is not required to believe every allegation of disabling pain or other nonexertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal quotation marks and citation omitted). When a medical impairment has been established,

however, the ALJ must provide "specific, cogent reasons for the disbelief" and may not discredit a claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Lester v. Chater*, 81 F.3d 821,834 (9th Cir. 1995). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Id* (internal quotation marks omitted). While an ALJ is responsible for determining the credibility of a claimant, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons. *Holohon v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722.) In addition, the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony. *Id* The findings made in rejecting the pain complaints must be specific to provide the court enough information to determine that the ALJ did not reject the claim arbitrarily, but based his decision on permissible factors. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345- 46 (9th Cir.1991) (en banc ). The evidence upon which the ALJ relies must be substantial. *Id* In assessing the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements about the symptoms, and other testimony from the claimant that appears less than candid; unexplained or inadequately explained failure to seek or follow a prescribed course of treatment; the claimant's daily activities; the claimant's work record; observations of treating and examining physicians and other third parties; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Smolen,* 80 F.3d at 1284; *See also Robbins v. Social Security Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), on conflicts between his testimony and his own conduct; or internal contradictions in that testimony.").

### D.   Analysis - Plaintiff's Credibility

The ALJ concluded that, while Plaintiff's statements regarding symptoms and resulting limitations were "generally credible," they were not credible "to the extent alleged"

because "no determination of a residual functional capacity limitation was made by any qualified treating physician that would limit the claimant to the degree asserted by the claimant." (Tr. 16).

The ALJ's conclusion is flawed. First, there was, in fact, no residual functional capacity determination submitted by any of Plaintiff's treating physicians. If it is error to discredit a claimant's subjective complaints based solely on the lack of objective medical evidence to fully corroborate the alleged severity of those symptoms, then it follows that it is error to discredit a claimant's subjective complaints based on the lack of subjective medical evidence to corroborate the severity of those symptoms. *Cf. Lester*, 81 F.3d at 834; *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

Second, although this Court disagrees with the premise implicit in the ALJ's conclusion - that a claimant's subject complaints may be discredited based on the lack of subjective medical evidence - even if the lack of a residual functional capacity determination by Plaintiff's treating physician could suffice as a basis to reject Plaintiff's otherwise credible testimony, the ALJ committed error by noting the lack of evidence the ALJ thought necessary to support Plaintiff's testimony, and failing to conduct an appropriate inquiry to obtain the medical evidence necessary. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry). This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). If the ALJ thought he needed to know how Plaintiff's treating physicians thought his impairment limited him, the ALJ could have conducted the appropriate inquiry, by subpoenaing the physicians or submitting further questions to them. *See Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996)(citations omitted).

Finally, the ALJ failed to specifically identify the testimony he found not to be credible. The findings made in rejecting the pain complaints must be specific to provide the court enough information to determine that the ALJ did not reject the claim arbitrarily, but based his decision on permissible factors. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995);

*Bunnell v. Sullivan*, 947 F.2d 341, 345- 46 (9th Cir.1991) (en banc ).  Further, the ALJ did not point to specific reasons for his finding, supported by the evidence in the case record; nor was his brief explanation "sufficiently specific to make clear ... the weight the adjudicator gave to the individual's statements and the reasons for that weight" as he is required to do. *See Robbins*, 466 F.3d at 884 (citing SSR 96-7p, 1996 WL 374186, SR 96-8p, 19996 WL 374184, at *7).

For the reasons set forth above, the Magistrate Judge recommends a finding that the ALJ's reasons for discrediting Plaintiff's subjective symptom testimony were legally insufficient and not based on substantial evidence in the record.

E.   Remand/Reverse

The district court has discretion to remand for further proceedings or to award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989).  Remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (citations omitted).  Where the test is met, "we will not remand solely to allow the ALJ to make specific findings...Rather we take the relevant testimony to be established as true and remand for an award of benefits." *Id* (citations omitted); *see also Lester,* 81 F.3d at 834.

Although the district court has discretion to remand for further proceedings or to award benefits, it would be inappropriate to remand for a finding of benefits as a matter of law based on evidence which the ALJ has not had the opportunity to consider. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).  Remand for further proceedings is appropriate upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding.

The Magistrate Judge recommends that the District Court remand the case pursuant to sentence six of 42 U.S.C. § 405(g), for the purpose of consideration of the new evidence.

Alternatively, because the ALJ found that Plaintiff did not meet the duration requirement at step two of the evaluation, no findings were made as to whether or not Plaintiff could perform his past relevant work or other work, under the fourth and fifth step of the five step disability evaluation. Thus, there are outstanding issues that would preclude this Court from making a recommendation for an award of benefits. Remand is appropriate where the ALJ is in a better position to evaluate medical evidence. *See Marcia,* 900 F.3d at 176. Should the District Court reject the Magistrate Judge's recommendation to remand this case pursuant to sentence six of 42 U.S.C. 405(g), the Magistrate Judge recommends that the appropriate remedy is to remand the case to the Commissioner of Social Security with instruction to reconsider Plaintiff's credibility, develop the record and take such further evidence as is required to determine Plaintiffs eligibility for benefits under the current law, and make appropriate findings consistent with this report, including clear findings that Plaintiff's impairments are, or are not, related for purposes of calculating whether the duration requirement has been met.

## V. RECOMMENDATION

For the foregoing reasons, it is the recommendation of this Court that the District Judge, after her independent review and consideration, remand the case pursuant to sentence six of 42 U.S.C. § 405(g), for the purpose of consideration of the new evidence.

Alternatively, should the District Court reject the Magistrate Judge's recommendation to remand this case pursuant to sentence six of 42 U.S.C. 405(g), the Magistrate Judge recommends that the appropriate remedy is to remand the case to the Commissioner of Social Security with instruction to reconsider Plaintiff's credibility, take such further evidence as is required to determine Plaintiffs eligibility for benefits under the current law, and make appropriate findings consistent with this report.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number:

**CV 08-544-TUC-CKJ.**

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 4th day of November, 2009.


_____
Bernardo P. Velasco
United States Magistrate Judge